UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:25-cr-00052-RLY-MJD |
| DANIEL JOHNSON, | ) |
| Defendant. | ) |

FILED
06/18/2025
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

## SUPERSEDING INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At times material to this Superseding Information:

1. The Richmond City Employees Federal Credit Union (the "Credit Union") was a financial institution located in Richmond, Indiana, which is in the Southern District of Indiana, the accounts of which were insured by the National Credit Union Share Insurance Fund. As such, the Credit Union is a financial institution as defined in Title 18, United States Code, Section 20.

2. Membership in the Credit Union was restricted to employees of the City of Richmond, the Morrison-Reeves Library, and the General Telephone Company, as well as family or household members of such employees. As part of its services, the Credit Union provided personal loans to qualified members, including secured vehicle loans. Each member was permitted to borrow up to $150,000 in secured loans or $10,000 in unsecured loans.

3. DANIEL JOHNSON, the defendant herein, was employed as Chief Executive Officer / Manager of the Credit Union. In that role, JOHNSON's duties encompassed virtually all operations functions as well as supervision and direction of two other employees. JOHNSON held substantial authority in the Credit Union's underwriting and processing of loans for members.

4. Credit Union officials, such as JOHNSON, could also apply for loans with the Credit Union. Pursuant to Credit Union policy, however, any such application was required to be processed and reviewed by the Credit Union's Board of Directors.

## THE SCHEME TO DEFRAUD

5. Beginning on or about August 5, 2021, and continuing to on or about September 16, 2021, in the Southern District of Indiana, the Defendant, DANIEL JOHNSON, did knowingly execute and attempt to execute a scheme and artifice to defraud a federally insured financial institution, specifically, the Richmond City Employees Federal Credit Union.

6. It was part of the scheme and artifice to defraud that JOHNSON, in his position as manager of the Credit Union, knowingly obtained moneys, funds, credit, assets, securities or other property owned or under the custody or control of the Credit Union by means of false and fraudulent pretenses, representations, and promises and deposited the assets into personal accounts controlled and owned by him. It was further part of the scheme that JOHNSON then used the funds and assets he withdrew from the Credit Union for his own purposes.

7. JOHNSON submitted two fraudulent applications for secured loans, each in the amount of $150,000, for the purpose of purchasing two vehicles, each of which would serve as collateral for the loans. As JOHNSON knew when he submitted them, each of the loan applications was materially false and misleading in that JOHNSON did not, and never intended to, purchase the vehicles that were to serve as collateral for the loans. Through his scheme, JOHNSON obtained what in effect were unsecured loans totaling approximately $300,000, which he used to pay personal debt and to purchase a house. As a result of JOHNSON's fraudulent actions, the Credit Union suffered a loss of approximately $285,855.66.

## AUGUST 2021 FRAUDULENT LOAN

8. On or about August 5, 2021, JOHNSON executed a Loan and Security Agreements and Disclosure Statement, in which he represented to the Credit Union that he sought a $150,000 loan to purchase a recreational vehicle, a Winnebago M-33C, purportedly valued at $196,048.

9. JOHNSON's representation was a materially false and fraudulent pretense, representation, and promise, however, because, as JOHNSON well knew, he had no intention of using the loan proceeds to purchase any such vehicle.

10. To further effectuate his scheme to defraud, JOHNSON falsified Credit Union records to falsely represent that the Board of Directors had approved the loan when in fact, as well known by JOHNSON, the Board had not approved the loan. In effect, JOHNSON granted himself a $150,000 unsecured loan without the Board of Directors' approval.

11. On August 5, 2021, JOHNSON processed his loan application and effectuated a ledger transfer of approximately $150,000 to his personal checking account.

12. Upon obtaining the loan, JOHNSON used the proceeds to pay off previously obtained, secured Credit Union loans, valued at approximately $65,697.98. In so doing, JOHNSON permanently removed the security interest associated with those loans.

13. It was further part of the scheme to defraud that JOHNSON used a portion of the loan proceeds to purchase a house.

14. It was further part of the scheme to defraud that JOHNSON used the remaining portion of the loan proceeds to pay off debt.

## SEPTEMBER 2021 FRAUDULENT LOAN

15. On or about September 16, 2021, JOHNSON executed another Loan and Security Agreements and Disclosure Statement, in which he represented to the Credit Union that he sought a $150,000 loan to purchase a recreational vehicle, specially, a Winnebago M-3.

16. JOHNSON's representation was a materially false and fraudulent pretense, representation, and promise, however, because, as JOHNSON well knew, he had no intention of using the loan proceeds to purchase any such vehicle.

17. To further effectuate his scheme to defraud, JOHNSON forged the signature of his then-wife, M.J., on the loan paperwork. In so doing, JOHNSON attempted to conceal from the National Credit Union Administration during its yearly audit the fact that he took a second $150,000 loan for his personal use, in violation of Credit Union policy.

18. On September 16, 2021, JOHNSON processed his loan application and effectuated a ledger transfer of approximately $150,000 to his personal checking account.

19. Upon obtaining the loan, JOHNSON used the proceeds to pay off a previously obtained, secured Credit Union loan, valued at approximately $10,103. In so doing, JOHNSON permanently removed the security interest that the Credit Union had in the previous loan.

20. It was further part of the scheme to defraud that, upon obtaining the loan proceeds, JOHNSON wired a portion of the loan proceeds to other financial institutions in order to pay down various personal debts, including student loan debt.

21. It was further part of the scheme to defraud that JOHNSON used the remaining portion of the loan proceeds to pay off other debt.

## COUNTS 1-2
### Bank Fraud
### 18 U.S.C. § 1344(1)

22. Paragraphs 1 through 21 are incorporated and realleged as if set forth herein.

23. On or about the dates listed below, in the Southern District of Indiana, DANIEL JOHNSON, the Defendant herein, did knowingly execute, and attempted to execute, a scheme or artifice to defraud a financial institution; to wit, the defendant, DANIEL JOHNSON, did knowingly execute and attempt to execute a scheme and artifice to defraud a federally insured financial institution, specifically, the Richmond City Employees Federal Credit Union, on or about the following dates:

| Count | On or About Date | Amount |
|---|---|---|
| 1 | August 5, 2021 | $150,000 |
| 2 | September 16, 2021 | $150,000 |

Each Count is in violation of Title 18, United States Code, Section 1344(1).

## FORFEITURE

24. The allegations contained in Counts One and Two of this Superseding Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).

25. Upon conviction of the offense in violation of Title 18, United States Code, Section 1344(1), set forth in this Superseding Information, DANIEL JOHNSON shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

26. Further, upon conviction, the United States will seek or order of forfeiture in the form of a money judgment of $285,855.66, representing the amount of proceeds the defendant obtained from violations of Title 18, United States Code, Section 1344(1), as charged above.

27. If any of the property described above, as a result of any act or omission of JOHNSON, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

In keeping with the foregoing, it is the intent to the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of all forfeitable property.

JOHN E. CHILDRESS
ACTING UNITED STATES ATTORNEY

By: *Kyle Sawa* for AE
Adam Eakman
Assistant United States Attorney

By: *Kyle Sawa*
Kyle M. Sawa
Chief, General Crimes Unit