IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


UNITED STATES OF AMERICA,    )
    )
         Plaintiff,    )
    ) Cause No.
  v.    ) 1:25-cr-00052-RLY-MJD
    ) Indianapolis, Indiana
DANIEL JOHNSON,    ) July 10, 2025
    )
         Defendant.    ) 3:16 p.m.


BEFORE THE HONORABLE RICHARD L. YOUNG

TRANSCRIPT OF PROCEEDINGS
CHANGE OF PLEA


APPEARANCES:

For the Plaintiff:          Adam Eakman
          United States Attorney's Office
          10 West Market Street
          Suite 2100
          Indianapolis, IN  46204


For the Defendant:          Harold S. Ansell
          Indiana Federal Community Defenders
          111 Monument Circle
          Suite 3200
          Indianapolis, IN  46204


Court Reporter:          Elizabeth Taylor Culiver, RPR, FCRR
          United States District Court
          101 N.W. MLK, Jr. Blvd.
          Evansville, IN  47708
          (812) 499-8782

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

1    *(In open court.)*

2         THE CLERK:  All rise.  United States District Court

3    for the Southern District of Indiana is now in session.  The

4    Honorable Richard L. Young presiding.

5         THE COURT:  Good afternoon.  Please be seated.

6         MR. ANSELL:  Good afternoon.

7         THE COURT:  All right.  We're here today in the

8    matter of *United States of America vs. Daniel Johnson*,

9    1:25-cr-52.  Mr. Johnson is here in person with his attorney

10   Sam Ansell.  United States is here by Assistant United States

11   Attorney Adam Eakman.

12        My record reflects on June 18, 2025, a Superseding

13   Information was filed.  On June 18, 2025, Petition to Enter a

14   Plea of Guilty was filed along with a Plea Agreement and

15   stipulated factual basis and today is the day set for change

16   of plea.

17        Is that your understanding of the record, Mr. Ansell?

18        MR. ANSELL:  It is, Your Honor.

19        THE COURT:  Mr. Eakman?

20        MR. EAKMAN:  It is, Your Honor.

21        THE COURT:  All right.  You need to swear him in,

22   Michelle.

23   *(Defendant sworn.)*

24        THE COURT:  Mr. Ansell, my understanding is your

25   client would request to have -- be seated?

1          MR. ANSELL:  Yes, Your Honor.

2          THE COURT:  That's fine.

3          Mr. Johnson, you wish to plead guilty pursuant to the

4    Plea Agreement?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  You understand you're under oath?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  What does that mean to you?

9          THE DEFENDANT:  Means everything I say better, will

10   be, and is the truth.

11         THE COURT:  Tell the truth, exactly right.  You

12   understand if you do not tell the truth or you make a false

13   statement, an additional felony may be filed against you such

14   as perjury or making false statements?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Please state your full name.

17         THE DEFENDANT:  Daniel Aaron Johnson.

18         THE COURT:  Mr. Johnson, how old are you today?

19         THE DEFENDANT:  37.

20         THE COURT:  How far did you go in school?

21         THE DEFENDANT:  High school grad- -- high school

22   diploma.

23         THE COURT:  Do you have any difficulty reading or

24   understanding the English language?

25         THE DEFENDANT:  I do not.

1          THE COURT:  If at any time during this proceeding you

2     do not understand what we're discussing or you have a question

3     about anything, will you make sure to make your attorney aware

4     of your question so we can make our best attempt to answer

5     that for you?

6          THE DEFENDANT:  I will, Your Honor.

7          THE COURT:  Have you been treated recently for any

8     mental illness or addiction to narcotic drugs of any kind?

9          THE DEFENDANT:  No, Your Honor.

10         THE COURT:  Are you presently under the influence of

11    alcohol or drugs?

12         THE DEFENDANT:  No, Your Honor.

13         THE COURT:  Are you taking any prescription

14    medication?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Does that medication cause you to have

17    any difficulty understanding what's going on about you?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  Do you feel your mind is clear today?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  All right.  I have a Superseding

22    Information and that's the document containing the formal

23    charge against you.  Have you had an opportunity to review the

24    allegations contained in the Superseding Information with your

25    attorney, Mr. Ansell?

1           THE DEFENDANT:  I have, Your Honor.

2           THE COURT:  Are you satisfied with Mr. Ansell's

3   representation of you?

4           THE DEFENDANT:  I am, Your Honor.

5           THE COURT:  All right.  I also have a Petition to

6   Enter a Plea of Guilty and a Plea Agreement.  Have you been

7   able to read and discuss the Plea Agreement with your

8   attorney?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Is that your signature on the back page?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Your signature on this document,

13  Mr. Johnson, tells me, among other things, that you've read

14  it, you understand it, and you agree with it.  Is all that

15  true?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  You understand the Court is not a party

18  to this agreement.  I've not accepted it, nor have I rejected

19  it at this time.

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Let's go through it.  Do you have it with

22  you?

23          THE DEFENDANT:  I do, Your Honor.

24          THE COURT:  Defendant having waived his right to

25  indictment by a grand jury petitions the Court for leave to

1    enter and agrees to enter a plea of guilty to the following

2    offenses charged in the Superseding Information.  Counts 1 and

3    3 -- or excuse me, 1 and 2, which charge the defendant

4    committed the offense of bank fraud, a violation of 18 U.S.

5    Code Section 1344(1).

6            Are those the two charges you wish to pled guilty to?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Possible statutory penalties upon

9    conviction.  Counts 1 and 2 are each punishable by a maximum

10   sentence of 30 years in prison, $250,000 fine, and up to three

11   years of supervised release following any term of

12   imprisonment.

13           Do you understand the possible statutory penalties

14   upon conviction?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  If you proceeded to trial, of course, the

17   government would have to prove your guilt beyond a reasonable

18   doubt.  The essential elements of these charges that the

19   government would have to prove beyond a reasonable doubt and

20   in each count the government would have to prove, one, that

21   there was a scheme to obtain money in the care and custody of

22   a financial institution as defined in 18 U.S. Code Section 20.

23   Two, that you knowingly carried out the scheme.  Three, that

24   you acted with intent to defraud, and four, that the scheme

25   involved a materially false and fraudulent representation.

1          If the government proved those four essential

2   elements to the jury beyond a reasonable doubt, the jury could

3   vote for conviction in that particular count.  If the

4   government failed to prove any one of those four essential

5   elements to the jury beyond a reasonable doubt, the jury could

6   not vote for conviction in that particular count.

7          Do you understand all this?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Sentencing.  The defendant agrees and

10  understands the Court will use its discretion to fashion a

11  sentence within the statutory range I just described for you.

12  In determining the appropriate sentence, I'll consider factors

13  set forth in the United States Code.  I'll also consult with

14  the Advisory Sentencing Guidelines.  And the Advisory

15  Sentencing Guidelines are just that.  They're advisory in

16  nature.  They're not binding or mandatory on the Court.  I may

17  follow the guidelines.  I may not.

18         Do you understand all this?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.  Page 4, paragraph 9.

21  Sentence of imprisonment.  The parties have not agreed upon a

22  specific sentence.  The parties reserve the right to present

23  evidence and arguments concerning what they believe to be the

24  appropriate sentence.  The government has agreed to advocate

25  for a sentence within the advisory guideline range as

1  determined by the Court.  The defendant is free to argue for

2  any sentence including a sentence below the applicable

3  guideline range.

4        Is all that your understanding and agreement?

5        THE DEFENDANT:  Yes, Your Honor.

6        THE COURT:  Paragraph 11.  Mandatory special

7  assessment of $100 per count for a total of $200 payable at

8  the time of sentencing.

9        Paragraph 12.  Fine.  The Court will consider whether

10  a fine is an appropriate component of your sentence.

11        Restitution.  The Court shall order restitution to

12  the victim in the full amount of the victim's losses as

13  required by law and determined by the Court.  Here it's

14  $285,855.66 to the successor in interest of the victim credit

15  union, namely Kemba Credit Union.

16        Is all that your understanding and agreement?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  Financial obligations.  Any financial

19  obligation imposed by the Court, including restitution, is due

20  and payable immediately.

21        Is all that your understanding and agreement?

22        THE DEFENDANT:  Yes, Your Honor.

23        THE COURT:  Okay.  Paragraph 15 on page 7.

24  Forfeiture.  Money judgment and substitute assets.  Defendant

25  further stipulates and agrees to a sum of money equal to or

not less than $285,855.66, which represents the proceeds the

defendant derived from the offense. Defendant acknowledges

and agrees that other property defendant owns or has an

interest in which is not contraband may be subject to

forfeiture as substitute assets pursuant to U.S. Code,

including to satisfy the amount of any money judgment ordered

in this case.

Is all that your understanding and agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Paragraph 23 on page 9. Sentencing

guideline stipulations. Sentencing guideline stipulations are

agreements reached between you and the government. They are

merely recommendations to the Court. They are not binding on

the Court. Do you understand this?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Stipulation A. Base offense level is

seven because the crimes to which the defendant is pleading

guilty involve fraud and the offense of conviction has a

statutory maximum term of imprisonment of 20 years.

Stipulation B, enhancement. The base offense level

is increased by 12 levels because the loss exceeded $250,000

but was less than $550,000.

Stipulation C, enhancement. The base offense level

is increased by two levels because the defendant's conduct

caused significant financial hardship to the victim credit

1   union.

2          Stipulation D, enhancement.  The base offense level

3   is increased by two levels because the defendant abused a

4   position of private trust.

5          Stipulation E, acceptance of responsibility.  To

6   date, the defendant has demonstrated a recognition and

7   affirmative acceptance of personal responsibility for his

8   criminal conduct.  He's entitled to a two-level reduction.

9   Further, by timely notifying the government of your intention

10  to enter a plea of guilty, at the time of sentencing, the

11  government will recommend the Court to decrease the offense

12  level by one additional level.

13         Then stipulation F, the final offense level is 20.

14         Is all that your understanding and agreement?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Paragraph 24, direct appeal.  Defendant

17  understands he has the statutory right to appeal the

18  conviction and sentence imposed in the manner in which the

19  sentence was determined.  Acknowledging this right in exchange

20  for concessions made by the government in the Plea Agreement,

21  defendant expressly waives his right to appeal the conviction

22  and sentence imposed in this case on any ground, including the

23  right to appeal conferred by 18 U.S. Code Section 3742.

24         Defendant further expressly waives any and all

25  challenges to the statute to which he's pleading guilty on

1  constitutional grounds as well as any challenge the

2  defendant's admitted conduct does not fall within the scope of

3  the applicable statute.  This waiver of appeal specifically

4  includes all provisions of the guilty plea and sentence

5  imposed, including the length and conditions of supervised

6  release and the amount of any fine.

7          Is all that your understanding and agreement?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Mr. Johnson, what this paragraph tells us

10  is that in exchange for concessions made to you by the United

11  States in arriving at the Plea Agreement, if I accept the Plea

12  Agreement and sentence you pursuant to the Plea Agreement,

13  then you will be giving up or waiving your right to appeal the

14  conviction and sentence in this case to a higher court.

15          Is that your understanding as well?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Did you discuss this with your attorney?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Is this all voluntary?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Mr. Eakman, what's the concession here?

22          MR. EAKMAN:  Yes, Your Honor.  Respectfully, we have

23  agreed to ask for a sentence within the guidelines as opposed

24  to going above the guidelines -- above guideline sentence.

25          THE COURT:  All right.  Mr. Ansell, is that your

1  understanding of the concession made to your client by the

2  United States in exchange for him giving up or waiving his

3  right to appeal?

4         MR. ANSELL:  Yes, Your Honor.

5         THE COURT:  And Mr. Johnson, is that your

6  understanding of the concession made to you by the United

7  States in exchange for you giving up or waiving your right to

8  appeal the conviction and sentence in this case to a higher

9  court?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Discussed all that very thoroughly with

12  your attorney?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  All right.  Mr. Johnson, those are the

15  basic provisions contained in the Plea Agreement that I have

16  in front of me.  Is this your understanding of the complete

17  agreement reached between yourself and the United States?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Has anyone made any promises to you that

20  are not contained in this agreement?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Is anyone forcing you to plead guilty?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  Anyone made any threats to get you to

25  plead guilty?

1              THE DEFENDANT:  No, Your Honor.

2              THE COURT:  Is your plea of guilty voluntary?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Discussed it very thoroughly with your

5       attorney?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Now, do you understand the terms of the

8       Plea Agreement are merely recommendations to the Court, and I

9       can reject those recommendations without allowing you to

10      withdraw your plea of guilty and impose a sentence that may be

11      more severe than you anticipate?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Do you also understand the offenses to

14      which you're pleading guilty are felony offenses, and if your

15      plea is accepted, you'll be adjudged guilty of those felony

16      offenses and such adjudication may deprive you of valuable

17      civil rights, such as the right to vote, the right to serve on

18      a jury, the right to hold public office, and, of course, the

19      right to possess any type of firearm.  Do you understand all

20      this?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do you also understand if you're

23      sentenced to prison, upon your release from prison, you'll be

24      placed on supervised release.  Supervised release has certain

25      conditions attached to it which you must follow.  If you

1  violate the conditions of your supervised release, what do you

2  think will happen?

3          THE DEFENDANT:  I'll go to jail.

4          THE COURT:  Go back to jail.  Makes sense, doesn't

5  it?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  All right.  Mr. Johnson, we've discussed

8  the charges against you in Counts 1 and 2, the statutory

9  penalties upon conviction, the essential elements the

10 government has to prove beyond a reasonable doubt before you

11 can be convicted in each count.  I'll use my discretion to

12 determine the appropriate sentence within that statutory

13 range, consulting the advisory guidelines, considering factors

14 set forth in the United States Code.  We've also discussed

15 there is no recommendation -- agreed upon recommendation as to

16 sentence.  The government will recommend a sentence within the

17 guidelines as calculated by the Court.  You're free to argue

18 for any sentence you believe is appropriate, even a sentence

19 below the guideline range.  We've discussed the restitution

20 and the amount of the loss to the successor-in-interest of the

21 victim credit union, your obligation to pay that.  We've also

22 talked about forfeiture and the money judgment and substitute

23 assets.  We've talked about your sentencing guideline

24 stipulations, and we've also finally discussed your right to

25 appeal the conviction and sentence in this case to a higher

1    court.  In exchange for concessions made to you by the United

2    States in arriving at the Plea Agreement, you're giving up or

3    waiving your right to appeal the conviction and sentence in

4    this case to a higher court.

5           Based on this discussion we've had here this

6    afternoon and discussions you've had with your attorney, do

7    you understand the possible consequences of your plea of

8    guilty?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  All right.  Now, have you and your

11   attorney talked about how the advisory sentencing guidelines

12   might apply in your case?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  You understand the Court will not be able

15   to determine your advisory guideline range until the

16   Presentence Investigation Report has been completed and you

17   and the government have had an opportunity to challenge the

18   reported facts and the application of the guidelines as

19   recommended by the probation officer and that the sentence

20   ultimately imposed may be different from any estimate your

21   attorney may have given you?  Do you understand this?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  You also understand that after your

24   initial advisory guideline range has been determined, the

25   Court has the authority in some circumstances to depart upward

1   or downward from that advisory guideline range, and I'll also

2   consider other factors set forth in the United States Code

3   that may result in the imposition of a sentence that is either

4   greater or lesser than that called for by the advisory

5   guidelines.  Do you understand all this?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  You also understand that parole has been

8   abolished.  If you're sentenced to prison, you'll not be

9   released to parole, but you'll be placed on supervised

10  release.

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right.  Mr. Johnson, you understand

13  you have the right to plead not guilty to these charges and

14  persist in that plea.  You'd then have the right to a trial by

15  jury.  At a trial by jury, you'd be presumed innocent and the

16  government would have to prove your guilt beyond a reasonable

17  doubt.  At a trial, you'd have the right to the assistance of

18  counsel for your defense appointed by the Court, if necessary,

19  at trial and every other stage of the proceeding.  You also

20  have the right to see and hear all the witnesses and have them

21  cross examined in your defense.  You have the right on your

22  own part to decline to testify unless you voluntarily elected

23  to do so in your own defense, and, of course, you have the

24  right to compel the attendance of witnesses to testify in your

25  defense.  Do you understand all these rights?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  Do you understand should you decide not

3 to testify or put on any evidence, that these facts cannot be

4 used against you?

5    THE DEFENDANT:  Yes, Your Honor.

6    THE COURT:  You further understand by entering a plea

7 of guilty, if that plea is accepted by the Court, there will

8 be no trial, and you have waived or given up your right to a

9 trial as well as all those other rights associated with a

10 trial, which I've just described for you.

11    THE DEFENDANT:  Yes, Your Honor.

12    THE COURT:  You understand we're not going to have a

13 trial in your case.

14    THE DEFENDANT:  Yes, Your Honor.

15    THE COURT:  All right.  Do you have a copy of the

16 Superseding Information?

17    THE DEFENDANT:  I do, Your Honor.

18    THE COURT:  That's the charging document.  Let's go

19 through it.

20    Again, if you have any questions or do not understand

21 what we're discussing, please make your attorney aware of

22 that.  All right?

23    United States attorney charges at all times material

24 to the Superseding Information, Richmond City Employees

25 Federal Credit Union, the credit union, was a financial

1   institution located in Richmond, Indiana, which is the

2   Southern District of Indiana.  The accounts of which were

3   insured by the National Credit Union Share Insurance Fund.  As

4   such, the credit union is a financial institution as defined

5   in Title 18 U.S. Code Section 20.

6          Membership in the credit union was restricted to

7   employees of the City of Richmond, the Morrison Reeves

8   Library, and the General Telephone Company, as well as family

9   or household members of such employees.

10          As a part of its services, the credit union provided

11   personal loans to qualified members, including secured vehicle

12   loans.  Each member was permitted to borrow up to $150,000 in

13   secured loans or $10,000 in unsecured loans.

14          Daniel Johnson, defendant herein, was employed as the

15   chief executive officer, manager of the credit union.  In that

16   role, Johnson's duties encompassed virtually all operation

17   functions, as well as supervision and direction of two other

18   employees.  Johnson held substantial authority in the credit

19   union's underwriting and processing of loans for members.

20          The credit union officials, such as Johnson, could

21   also apply for loans with the credit union.  Pursuant to

22   credit union policy, however, any such application was

23   required to be processed and reviewed by the credit union

24   Board of Directors.

25          Mr. Johnson, do you understand the nature of the

allegation in the general allegation section of the

information?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is all that true?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  The scheme to defraud.

Beginning on or about August 5, 2021, and continuing on to or

about September 16, 2021, Southern District of Indiana,

defendant, Daniel Johnson, did knowingly execute and attempt

to execute a scheme and artifice to defraud a federally

insured financial institution, specifically, the Richmond City

Employees Federal Credit Union.  It was part of the scheme and

artifice to defraud that Johnson in his position as manager of

the credit union knowingly obtained money, funds, credit,

assets, securities, or other property owned or under the

custody or control of the credit union by means of false and

fraudulent pretenses, representations and promises, and

deposited the assets into personal accounts controlled and

owned by him.

It was further part of the scheme that Johnson then

used the funds and assets he withdrew from the credit union

for his own purposes.

Johnson submitted two fraudulent applications for

secured loans, each in the amount of $150,000 for the purpose

of purchasing two vehicles, each of would serve as collateral

1    for the loans.  As Johnson knew when he submitted them, each

2    of the loan applications was materially false and misleading

3    in that Johnson did not and never intended to purchase the

4    vehicles that were to serve as collateral for the loans.

5          Through his scheme, Johnson obtained what, in effect,

6    were unsecured loans totaling approximately $300,000, which he

7    used to pay personal debt and purchase a house.  As a result

8    of Johnson's fraudulent actions, the credit union suffered a

9    loss of approximately $285,855.66.

10          Mr. Johnson, do you understand the nature of the

11   allegations in the scheme to defraud section of the

12   information?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Is all that true?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  The August 2021 fraudulent loan.  On or

17   about August 5, 2021, Johnson executed a loan and security

18   agreements and disclosure statement in which he represented to

19   the credit union that he sought a $150,000 loan to purchase a

20   recreational vehicle, a Winnebago M-33C, purportedly valued at

21   $196,048.

22          Johnson's representation was a materially false and

23   fraudulent pretense, representation, and promise, however,

24   because, as Johnson well knew, he had no intention of using

25   the loan proceeds to purchase any such vehicle.

1          To further effectuate his scheme to defraud, Johnson

2    falsified credit union records to falsely represent that the

3    Board of Directors had approved the loan when, in fact, as

4    well known by Johnson, the Board had not approved the loan.

5    In effect, Johnson granted himself a $150,000 unsecured loan

6    without the Board of Directors' approval.

7          On August 5, 2021, Johnson processed his loan

8    application and effectuated a ledger transfer of approximately

9    $150,000 to his personal checking account.

10          Upon containing the loan, Johnson used the proceeds

11    to pay off previously obtained secured Credit Union loans

12    valued at approximately $65,697.98.  In so doing, Johnson

13    permanently removed the security interest associated with

14    those loans.

15          It was further part of the scheme to defraud that

16    Johnson used a portion of the loan proceeds to purchase a

17    house.

18          It was further part of the scheme to defraud that

19    Johnson used the remaining portion of the loan proceeds to pay

20    off debt.

21          Mr. Johnson, do you understand the nature of the

22    allegation in the August 2021 fraudulent loan section of the

23    information?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Is all that true?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  September 2021 fraudulent loan.  On or

3     about September 16, 2021, Johnson executed another loan and

4     security agreements and disclosure statement in which he

5     represented to the Credit Union that he sought a $150,000 loan

6     to purchase a recreational vehicle, specifically a Winnebago

7     M-3.

8          Johnson's representation was a materially false and

9     fraudulent pretense, representation, and promise, however,

10    because, as Johnson well knew, he had no intention of using

11    the loan proceeds to purchase any such vehicle.

12         To further effectuate the scheme to defraud, Johnson

13    forged the signature of his then wife, M.J., on the loan

14    property.  In doing so, Johnson attempted to conceal from the

15    National Credit Union Administration during its yearly audit

16    the fact that he took a second $150,000 loan for his personal

17    use in violation of Credit Union policy.

18         On September 16, 2021, Johnson processed his loan

19    application and effectuated a ledger transfer of approximately

20    $150,000 to his personal checking account.

21         Upon obtaining the loan, Johnson used the proceeds to

22    pay off a previously obtained, secured Credit Union loan

23    valued at approximately $10,103.  In doing so, Johnson

24    permanently removed the security interest that the Credit

25    Union had in the previous loan.

1          It was further part of the scheme to defraud that

2    upon obtaining the loan proceeds, Johnson wired a portion of

3    the loan proceeds to other financial institutions in order to

4    pay down various personal debts, including student loan debt.

5          It was further part of the scheme to defraud that

6    Johnson used the remaining portion of the loan proceeds to pay

7    off other debt.

8          Mr. Johnson, do you understand the nature of the

9    allegation in the September 2021 fraudulent loan section of

10   the Information?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Is all that true?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Then as to Count 1 and Count 2, bank

15   fraud, violation of 18 U.S. Code Section 1344(1), paragraphs 1

16   through 21 are incorporated as if they were just set forth in

17   these counts.  Do you understand this?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  All right.  On or about the day listed

20   below in the Southern District of Indiana, Daniel Johnson,

21   defendant herein, did knowingly execute and attempt to execute

22   a scheme or artifice to defraud a financial institution.

23   Namely, defendant, Daniel Johnson, did knowingly execute and

24   attempt to execute a scheme and artifice to defraud a

25   federally insured financial institution, specifically the

1  Richmond City Employees Federal Credit Union on or about the

2  following dates.  As to Count 1, on or about August 5, 2021,

3  in the amount of $150,000.  Is all that true, Mr. Johnson?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  As to Count 2, on September 16, 2021, in

6  the amount of $150,000.  Is all that true as to Count 2,

7  Mr. Johnson?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Each count is a violation of 18 U.S. Code

10  Section 1344(1).

11          Then there's a forfeiture allegation.  Do you

12  understand the nature of the forfeiture allegation?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  All right.  Mr. Johnson, tell me in your

15  own words, what did you do here?  How did you do all this and

16  why did you do it?

17          THE DEFENDANT:  How did I do it?  The Board of

18  Directors were not that involved, and it was pretty much their

19  discretion that whatever needed to be done, for me to take

20  care of it, so they just passed a lot of it off to me.

21          Why did I do it?  Almost every other loan I've had or

22  needed before that, they approved without much question or

23  conversation, so I -- I made the assumption they would approve

24  it because I knew I could pay it back because I was paying it

25  back, so I just took the quick easy way out.

1          THE COURT:  But you knew you needed their approval,

2    right, for these loans?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And so on these two loans, you applied

5    for the maximum, right?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And you received $150,000 in each Count 1

8    and Count 2?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And what did you do with the money?

11          THE DEFENDANT:  Bought a house, paid down debt, paid

12    off some of my ex-wife's debt that she had in my name, paid

13    off some medical bills because I've had about 20 surgeries

14    since 2020, and then just paid off the rest of my remaining

15    debt.

16          THE COURT:  And then in Count 2, you used your then

17    wife's signature?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  And did you have her

20    permission to do that?

21          THE DEFENDANT:  I did not, Your Honor.

22          THE COURT:  All right.  And you knew that that was

23    not a proper thing to do?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And that was against company -- or Credit

1 Union policy?

2 THE DEFENDANT: Yes, Your Honor.

3 THE COURT: And what's happened to the house and all

4 the other stuff that you used this money for?

5 THE DEFENDANT: The house is currently in the process

6 of either being foreclosed or in the process of a short sale.

7 The car is in bankruptcy. And then everything else was

8 already paid off except for I have additional medical debt

9 since then.

10 THE COURT: Do you understand you got to pay all this

11 back?

12 THE DEFENDANT: Yes, Your Honor.

13 THE COURT: Mr. Ansell, any questions for your

14 client?

15 MR. ANSELL: Just briefly, Judge. Mr. Johnson, did

16 you -- after you had taken out these loans without board

17 approval, did you tell the board that you had taken out the

18 loans at the next board meeting?

19 THE DEFENDANT: Yes.

20 MR. ANSELL: And -- but you did not tell them there

21 was no collateral?

22 THE DEFENDANT: Correct.

23 MR. ANSELL: And correct me if I'm wrong, you did not

24 tell them that the second loan was not actually for your wife?

25 THE DEFENDANT: I did not, correct.

1          MR. ANSELL:  That's all, Judge.

2          THE COURT:  Mr. Eakman, any questions for

3    Mr. Johnson?

4          MR. EAKMAN:  No questions from the government.

5          THE COURT:  Does the government have a factual basis?

6          MR. EAKMAN:  I'm sorry.  What was that?

7          THE COURT:  Does the government have a factual basis?

8          MR. EAKMAN:  Aside from what was read into the

9    record?

10         THE COURT:  Yeah.

11         MR. EAKMAN:  We would rest on what is in the

12   Superseding Information.

13         THE COURT:  Mr. Johnson, before I can accept your

14   plea of guilty and find you guilty, I have to be convinced of

15   your guilt beyond a reasonable doubt, just like a jury would

16   have to be convinced of your guilt beyond a reasonable doubt,

17   and there's a couple ways we can do that.  One, is to bring

18   the investigating agents here in the courtroom, and they would

19   testify as to what the evidence would be at your trial.

20   Another way we can do that is you and the government agree

21   what the evidence would be at your trial, and that's called

22   the factual basis for the guilty plea, and that's contained at

23   paragraph 19 of your Plea Agreement.

24         Is all that your understanding and agreement as well?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And what's recited in paragraph 19 of

2    your Plea Agreement and in the Superseding Information would

3    be the evidence at your trial and that evidence would support

4    a verdict of guilty.

5          Is that your understanding and agreement?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  All right.  Paragraph 19.  Defendant

8    admits that each and every fact alleged in the Superseding

9    Information is true.  Parties stipulate and agree the

10   government could prove each and every fact alleged in the

11   Superseding Information to a jury beyond a reasonable doubt if

12   the case went to trial and that such facts establish a

13   sufficient factual basis for defendant's plea of guilty to the

14   offenses set forth in paragraph 1 of the Plea Agreement.  The

15   parties acknowledge that such facts are only a summary of the

16   government's evidence.  The parties reserve the right to

17   present additional evidence at the time of sentencing if they

18   so choose, and this paragraph is not intended to foreclose the

19   presentation of such additional evidence.

20         Did I read all that correctly?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  All right.  As to the charge in Count 1,

23   bank fraud, as to the charge in Count 2, bank fraud, how do

24   you plead?  Guilty or not guilty?

25         THE DEFENDANT:  Guilty, Your Honor.

1          THE COURT:  It is the finding of the Court in the

2    case of the *United States of America vs. Daniel Johnson,*

3    defendant is fully competent and capable of entering an

4    informed plea.  Defendant is aware of the nature of the

5    charges and the consequences of his plea, and that plea of

6    guilty is a knowing and voluntary plea supported by a

7    stipulated factual basis containing each of the essential

8    elements of that offense charged in Counts 1 and 2.  The plea

9    is therefore accepted.  The defendant is now adjudged guilty

10   of that offense Count 1 and Count 2 of the Superseding

11   Information.

12         Any questions about anything at this point,

13   Mr. Johnson?

14         THE DEFENDANT:  No, Your Honor.

15         THE COURT:  All right.  The next phase of this

16   proceeding will be sentencing.  There will be a Presentence

17   Investigation Report prepared by the probation office.  That's

18   a report that tells me a little bit about you, your family

19   background, your employment, education history, prior criminal

20   record, if you have one.  There will also be a section in that

21   report detailing your involvement in this criminal activity

22   and also a section in which of the probation officer

23   recommends the application of the sentencing guidelines.  It's

24   a very important document.  I want to make sure all the

25   information in that report is true and accurate.  I do not

1    want to base my sentencing decisions on information that's not

2    true and accurate, and I don't think you'd want me to do that

3    either.

4            Has he been interviewed yet, Mr. Ansell?

5            MR. ANSELL:  He has, Your Honor.

6            THE COURT:  Okay.  So probation will continue their

7    background check on you.  They'll prepare the report.  They'll

8    put it all on paper, distribute the report to you, your

9    attorney, and the government attorney.  And you'll have time

10   to review it, discuss it thoroughly with your attorney.  If

11   you find any information in that report that's not accurate or

12   in some way needs to be addressed, let your attorney know that

13   prior to your sentencing date so we can be prepared to resolve

14   those issues at your sentencing hearing.  All right?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  It'll take about 70 days from today for

17   probation to complete the report, distribute it to you and the

18   government, give you and the government an opportunity to

19   review it and make comment or objections, and then, of course,

20   I have to have an opportunity to review it myself, so that all

21   takes usually a minimum of about 70 days.  Do you understand

22   this?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Let's see here.  I've got a couple of

25   available days here in September.  September 11, 2025, at

```
 1   4 clock p.m. or September 12th at 10 o'clock a.m.
 2             MR. ANSELL:  Judge, I think this has already been set
 3   for October 3rd.
 4             THE CLERK:  I'll look.
 5             THE COURT:  We'll check on that.
 6             MR. ANSELL:  Might be the 1st.
 7             THE COURT:  We'll check on that, too.
 8             THE CLERK:  I show nothing on the docket unless you
 9   can give me a docket number.
10             MR. ANSELL:  All I can give you is an email
11   correspondence with Tina.
12             THE CLERK:  I can't verify an email.
13             MR. ANSELL:  Were you on that email thread that we
14   talked about setting this?
15             MR. EAKMAN:  I don't have it on my calendar.
16             MR. ANSELL:  There hasn't been an order yet.  Let me
17   see.  Let me find the email.  So -- let's see.  No.
18             THE COURT:  Why don't we just set it for
19   September 11th or September 12th?
20             MR. ANSELL:  Judge, I'm going to be in trial those
21   days.
22             THE COURT:  Oh, you are?  Okay.
23             MR. ANSELL:  In this court, actually.
24             THE COURT:  Okay.
25             THE CLERK:  Tina is typing me right now.
```

1        THE COURT:  Well, we'll get a date here.  My report

2   indicates you're compliant with your pretrial, so I'm going to

3   show you continued release on previous conditions imposed by

4   the magistrate judge.

5        THE DEFENDANT:  Thank you, Your Honor.

6        THE COURT:  You need to keep in touch with your

7   attorney.  In the event we need you to appear in court, we'll

8   notify your attorney, and he needs to be able to get in touch

9   with you.  All right?

10       THE DEFENDANT:  Yes, Your Honor.

11       THE CLERK:  She said when there was a combined plea

12  and sentencing, that's what was going on.  She said that she

13  will settle up with them later.

14       MR. ANSELL:  Sounds good.

15       THE COURT:  Tina will get with you and get with you

16  as well, and we'll get a date for you.  Keep in touch with

17  your attorney, Mr. Johnson.  All right?

18       THE DEFENDANT:  Will do, Your Honor.

19       THE COURT:  Thank you very much.

20       THE CLERK:  All rise.

21

22

23

24

25

1                    ***************************

2

3                    CERTIFICATE OF COURT REPORTER

4    I, Elizabeth Taylor Culiver, RPR, FCRR, certify that the

5    foregoing is a correct transcript from the record of

6    proceedings in the above-entitled matter.

7

8    S/s Elizabeth Taylor Culiver_____    August 15, 2025
     ELIZABETH TAYLOR CULIVER, RPR, FCRR
9    Official Court Reporter
     Southern District of Indiana
10   Evansville Division

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25