UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 1:25-cr-00052-RLY-MJD |
| DANIEL JOHNSON, | ) | |
| Defendant. | ) | |

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States of America, by counsel, respectfully submits the following for the Court's consideration in the sentencing of the Defendant, Daniel Johnson. Based on the information and arguments set forth below, a sentence of 41 months is the appropriate sentence in this case.

### I. Introduction

Daniel Johnson was caught stealing from the very credit union he was hired to protect. As the Chief Executive Officer of the Richmond City Employees Federal Credit Union, Johnson lied to its board members in order to get hundreds of thousands of dollars he was not entitled to. He did this multiple times over, and he even forged signatures to get these funds. This is a serious offense and should be punished accordingly. A sentence of 41 months is appropriate here.

### II. 3553(a) Factors

#### A. A sentence of 41 months is necessary to reflect the seriousness of the offense.

In August and September 2021, Johnson approved two illegitimate loans to himself, each for $150,000. In so doing, he did not inform the Credit Union's board of the existence of the loans, nor did he seek their required approval prior to issuing the funds. In addition, in the loan

1

paperwork, Johnson falsely represented that the loans were for the purchase of two separate Winnebago's. Johnson did not use the proceeds to purchase any Winnebago.

For his first loan, Johnson received $150,000 to aid in the purchase of a Winnebago. Before getting those funds, however, various authorizations from the Credit Union's Board members were required. Johnson submitted a document purporting to show that he had obtained the necessary authorization from the board members (below). When interviewed, however, multiple board members said they never provided any authorization. The document Johnson provided claiming he had their approval was fraudulent.

**RICHMOND CITY**
EMPLOYEES FEDERAL CREDIT UNION

Board of Directors Approved Loans

| Name | Approval (Y/N) | Date Contacted | Signature |
|---|---|---|---|
| John Lackey, President | Yes | 8/3 | |
| Brad Sturgeon, Vice President | Yes | 8/3 | |
| Angela McDaniel, Treasurer | Yes | 8/3 | |
| Wesley Beeler, Secretary | Yes | 8/3 | |
| Matt Evans | Yes | 8/3 | |
| Monica Burns | Yes | 8/3 | |
| Sean O'Brien | Yes | 8/3 | |
| Jerry Purcell | . | | |
| Michael Ripberger | Yes | 8/3 | |

Date of Board of Directors Meetings that loan was signed off on by the Board
__/__/___

Manager Signature: _D. T_

Internal Use only

In addition, Johnson represented that the loan was for a 2018 Winnebago M-33c. He even attached an online advertisement for the vehicle. This too was a lie (see below).

**Security:** Collateral securing other loans with the Credit Union may also secure this Loan. You are giving a security interest in Your shares and dividends and, if any, Your deposits and interest in the Credit Union; and the Property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| RV/Camper | Winnebago M-33C | 2018 | | Secured | $196,048 | |
| | | | | $ | $ | |

Other (Describe)
Pledge of Shares $ _____ in Account No. _____ $ _____ in Account No. _____
See Your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

**2018 Winnebago M-33C Ford**

| | |
|---|---|
| Vehicle Type | Motorhomes |
| Fuel Type | Gasoline |
| Series | Sightseer Series |
| Model | M-33C Ford |
| Length | 34' 4" |
| Coach Design | Motor Home (Class A) |
| FloorPlan | Queen Bed |
| Self-Contained | Yes |
| Slides | 3 |

| | Suggested List | Used Wholesale Trade-In | Used Retail |
|---|---|---|---|
| BASE PRICE | $196,048 | $105,000 | $135,600 |
| TOTAL PRICE | $196,048 | $105,000 | $135,600 |

**Vehicle Notes**
Year Note:
In addition to what comes standard the Travato also includes side screen door. Forza include exterior entertainment center w/ 32" LED TV, electric fireplace, Nouveau digital comfort control mattress (queen & standard size), JBL premium sound, MCD American Duo solar/blackout shades, Sirius XM radio, Primera passenger + lounge footrest & flip-up seat, studio loft w/ electric bed, HD Satellite TV System, stackable washer/dryer, tankless water heater. Horizon include king bed, central vacuum system, dishwasher, Infotainment center w/ GPS & Sirius XM, JBL Premium sound system, exterior ladder, LED lighting ground effects, refrigerator/freezer, TPMS, 50" HDTV, TV Antenna, HD TV satellite system, & stackable washer/dryer. Grand Tour include Interior Package, air leveling, 55" TV exterior entertainment center, Infinity sound speakers, in-floor heat, TPMS, premium home theater sound bar system, directional TV Antenna, HD TV satellite system, & Valance stainless trim. Sunstar & Vista include exterior entertainment center w/ 32" TV, AC/DC inverter 1000w, studio loft w/ electric bed, & video camera system. Sunstar LX & Vista LX include benchmark upgrade dinette, defrost fans, exterior entertainment center w/ 32" TV, heat pump for roof A/C, AC/DC inverter 1000w, protective mask for front exterior, microwave/convection oven, satellite Sirius XM, three-burner range w/ oven, passenger seat w/ footrest, driver side seat pedestal w/ six-way power assist, studio loft w/ electric bed, 24" TV in bedroom, & video camera system.

In addition to what comes standard the Travato also includes side screen door. Forza include exterior entertainment center w/ 32" LED TV, electric fireplace, Nouveau digital comfort control mattress (queen & standard size), JBL premium sound, MCD American Duo solar/blackout shades, Sirius XM radio, Primera passenger + lounge footrest & flip-up seat, studio loft w/ electric bed, HD Satellite TV System, stackable washer/dryer, tankless water heater. Horizon include king bed, central vacuum system, dishwasher, Infotainment center w/ GPS & Sirius XM, JBL Premium sound system, exterior ladder, LED lighting ground effects, refrigerator/freezer, TPMS, 50" HDTV, TV Antenna, HD TV satellite system, & stackable washer/dryer. Grand Tour include Interior Package, air leveling, 55" TV exterior entertainment center, Infinity sound speakers, in-floor heat, TPMS, premium home theater sound bar system, directional TV Antenna, HD TV satellite system, & Valance stainless trim. Sunstar & Vista include exterior entertainment center w/ 32" TV, AC/DC inverter 1000w, studio loft w/ electric bed, & video camera system. Sunstar LX & Vista LX include benchmark upgrade dinette, defrost fans, exterior entertainment center w/ 32" TV, heat pump for roof A/C, AC/DC inverter 1000w, protective mask for front exterior, microwave/convection oven, satellite Sirius XM, three-burner range w/ oven, passenger seat w/ footrest, driver side seat pedestal w/ six-way power assist, studio loft w/ electric bed, 24" TV in bedroom, & video camera system.

**Value Explanations**
Suggested List
The value listed in this column reflects the approximate price of the unit when it is brand new. The prices listed are furnished by the manufacturer and are assumed to be correct. The list price does not include freight charges.

On August 5, 2021, Johnson signed the loan package, along with the officer manager. Johnson lied to her too and said the loan was for an RV and that he had obtained Board approval.



Johnson had no intention of using the money to buy a vehicle. The money he received was never used to purchase a Winnebago. Rather, he used the money to pay off debt, including his mortgage. Text conversations Johnson had with his mother at the time confirm the point. Johnson told to his mother just prior to obtaining the loan that he planned on selling certain stocks so he could pay off his residence to ensure his soon-to-be ex-wife could not claim the home. Johnson ultimately obtained the Credit Union loan and used a large portion to pay off the mortgage, as he previewed to his mother:

| Timestamp - UTC | From | To | Message |
|---|---|---|---|
| 8/10/2021 3:43PM | Daniel Johnson | Mother | Instead of the 15 year loan I'm going to cash out my stocks and pay for the house that way Kenzy can't get to claim any part of the purchase. |
| 8/10/2021 3:48PM | Mother | Daniel Johnson | Are you sure? |
| 8/10/2021 3:48PM | Daniel Johnson | Mother | Yep |
| 8/10/2021 3:48PM | Daniel Johnson | Mother | My stocks and Walgreens options equal $72,000 |
| 8/10/2021 3:49PM | Daniel Johnson | Mother | All purchased with proof before 2018 |
| 8/10/2021 3:49PM | Daniel Johnson | Mother | She has no legal claim |
| 8/10/2021 3:50PM | Mother | Daniel Johnson | Do you need to pay us back out of your savings too? You will be paying a lot in taxes. Might want to talk to a tax person |

| 8/10/2021 3:51PM | Daniel Johnson | Mother | It'll be just normal income tax rate because I've had them for longer than 12 months. The $72,000 is after taxes |
| --- | --- | --- | --- |
| 8/10/2021 3:52PM | Daniel Johnson | Mother | I'll have a check for $6,400 for you when you get back if you want |
| 8/10/2021 4:00PM | Mother | Daniel Johnson | If you have it and want to protect it. Dad is concerned about your taxes, so please make sure that is correct. |
| 8/10/2021 4:01PM | Daniel Johnson | Mother | I've already moved the money from Kenzy |
| 8/10/2021 4:06PM | Mother | Daniel Johnson | Ok |
| 8/17/2021 6:03PM | Daniel Johnson | Mother | I have 5 house keys |
| 8/17/2021 6:04PM | Mother | Daniel Johnson | YEAH!! Send me your address |
| 8/17/2021 6:04PM | Mother | Daniel Johnson | 503 Beech Ave Centerville, IN 47330 |

On September 16, 2021, Johnson obtained another $150,000 loan. In Johnson's second loan, the loan agreement contained an authorizing signature from Johnson's ex-wife Makenzy. An interview of Makenzy, however, revealed that she did not sign or authorize Johnson to sign the application on her behalf, nor did she have any knowledge of the loan's existence until she was questioned about it by authorities. Rather, Johnson forged Makenzy's signature to provide a semblance of propriety in taking custody of the funds associated with the loan, given individuals had a lending limit of $150,000 per Credit Union policy, and Johnson had already reached that limit with the first loan to himself.



Johnson represented that it would be a secured vehicle loan obtained to purchase a 2016 Winnebago M-3. Again, Johnson did not use the funds to purchase a Winnebago, preventing the Credit Union from gaining collateral on the loan.



Once he obtained the loans, Johnson spent the proceeds in various ways, most notably to pay off his house and service various loans he previously obtained from the Credit Union in the days following obtaining the funds. In doing so, Johnson turned both loans from secured loans into unsecured loans.

In sum, Johnson has pleaded guilty to two counts of bank fraud, but his conduct was much more than two lies. Johnson lied to people who trusted him. He forged the signature of his ex-wife. What's more, he did all of this to get hundreds of thousands of dollars in unsecured loans. This is a serious offense. A sentence on the high-end of the guidelines—a sentence of 41 months—would adequately reflect the seriousness of the offense.

**B.     A sentence of 41 months is necessary to protect the public from further crimes of the defendant.**

Johnson has a history of abusing the trust placed in him. First, Johnson abused the trust his wife placed in him to love and protect her. PSR ¶ 42. In July 2021, the police responded to a residence after receiving a report of domestic violence. When they arrived, officers found Johnson and his wife, who was upset and holding an infant. Johnson admitted to grabbing his wife in an attempt to get her cell phone. His wife, however, said Johnson grabbed her arms and

put her in a headlock. She said this was not the first time Johnson was abusive to her. Johnson was convicted of domestic battery.

And in the instant offense, Johnson abused the trust of all of the members of the Richmond City Employees Federal Credit Union. This was a close community because membership in the Credit Union was restricted to employees of the City of Richmond, the Morrison-Reeves Library, and the General Telephone Company, as well as family or household members of these employees. During his change of plea hearing, Johnson admitted to abusing the trust placed in him saying, "The Board of Directors were not that involved, and it was pretty much their discretion that whatever needed to be done, for me to take care of it." Ex. A, p. 24. As the Chief Executive Officer, Johnson was tasked with protecting the members' money. Instead, however, Johnson chose to abuse this trust and line his own pockets through dishonesty.

As these convictions demonstrate, even those closest to Johnson cannot trust him. That makes him especially dangerous. A light sentence would not sufficiently protect the public from Johnson. A sentence of 41 months is appropriate here

## CONCLUSION

The United States respectfully submits that Johnson should receive a sentence of 41 months in prison for his offense.

        Respectfully submitted,

        THOMAS E. WHEELER II
        United States Attorney


By:    *s/ Adam Eakman*
        Adam Eakman
        Assistant United States Attorney
        United States Attorney's Office
        10 West Market Street, Suite 2100
        Indianapolis, IN 46204-3048
        Telephone: 317-226-6333
        Email: adam.eakman@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2025, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice and service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

By: *s/ Adam Eakman*
Adam Eakman
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone: 317-226-6333
Email: adam.eakman@usdoj.gov